**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHELE RENEE REILLO,

        Plaintiff,

                                       Case No. 3:19-cv-109-J-34JBT

vs.

ALTERNATE HEALTH USA, INC.,

        Defendant.

_____/

## O R D E R

      **THIS CAUSE** is before the Court on the issue of whether the entry of summary judgment <u>sua</u> <u>sponte</u> in favor of Defendant Alternate Health USA, Inc. on Counts V, VI, VII, and VIII of the Complaint (Doc. 3) is warranted.   The Court has reviewed the record and heard argument from counsel at a hearing on August 4, 2020, the record of which is incorporated herein by reference.   For the reasons that follow, the Court finds that <u>sua</u> <u>sponte</u> summary judgment in favor of Defendant on the remaining claims in this action is entirely warranted and appropriate at this time.

     **I.**    **Procedural History**

      Plaintiff Michele Reillo initiated this action in state court on December 26, 2018, by filing an eight-count Complaint (Doc. 3) against Defendant Alternate Health USA, Inc. (Alternate Health).   Alternate Health removed the action to this Court on January 24, 2019.   <u>See</u> Notice of Removal (Doc. 1).   On March 13, 2019, the Court entered a Case Management and Scheduling Order (Doc. 18; CMSO) which, in relevant part, set a discovery deadline of August 16, 2019, and a dispositive motion deadline of September

16, 2019.   On August 16, 2019, the parties jointly requested an extension of these deadlines, which the Court granted, extending the discovery deadline to October 18, 2019, and the dispositive motion deadline to November 15, 2019.   See Joint Motion to Extend the Deadlines for Discovery and for Dispositive/Daubert Motions (Doc. 29; Joint Motion); Order (Doc. 30).[1]   Incredibly, despite having seven months in which to do so, the parties engaged in absolutely no discovery.   Indeed, neither party took a single deposition.   On November 15, 2019, without actually knowing whether the facts of this case were in dispute, given her failure to engage in any discovery, Reillo filed a motion seeking the entry of summary judgment in her favor on all eight claims set forth in the Complaint.   See Plaintiff's Motion for Summary Judgment (Doc. 31; Motion).   Remarkably, Alternate Health let the dispositive motion deadline expire without filing anything.   Instead, Alternate Health argued in its Response and Sur-Reply that the Court should deny Reillo's Motion and sua sponte enter summary judgment in its favor.   See Opposition to Plaintiff's Motion for Summary Judgment (Doc. 33; Response) at 14, filed November 27, 2019; Defendant Alternate Health USA, Inc.'s Sur-Reply in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 39; Sur-Reply) at 13-14, filed January 15, 2020.   In her Reply, Reillo did not address Alternate Health's arguments as to the propriety of sua sponte summary judgment as to Counts II, III, V, VI, VII and parts of VIII, nor did Reillo seek leave to respond or otherwise object when Alternate Health argued in its Sur-Reply that the Court should enter sua sponte summary judgment in its favor on all counts of the Complaint.   See

---

[1] Notably, in the Joint Motion the parties stated that they needed an extension of time because the parties "intend to fully engage in discovery (propounding final discovery requests and completing all depositions) . . . ."   See Joint Motion ¶ 4.   Although the Court granted the requested extension, it appears the parties did not follow through with their stated intention.

generally Plaintiff's Reply in Support of Motion for Summary Judgment (Doc. 36; Reply), filed December 23, 2019.

On July 28, 2020, six months after all briefing had been completed, the Court entered an Order acknowledging the summary judgment briefing in this matter and specifically noting Alternate Health's contention that the Court should enter summary judgment sua sponte in its favor on all Counts.   See Order (Doc. 43).   The Court set the matter for hearing, finding that it "would be beneficial in resolving the arguments raised in the briefs regarding the entry of summary judgment in favor of Plaintiff or Defendant."   See id. at 1-2.   At the August 4, 2020 Hearing, the Court denied Reillo's Motion in its entirety given the absence of any evidence on certain elements of her claims and myriad disputed issues of fact on others.   The Court also granted summary judgment sua sponte in favor of Alternate Health on Counts I-IV of the Complaint (breach of contract, quantum meruit, unjust enrichment and Florida whistleblower retaliation).   See Minute Entry (Doc. 44); see Transcript of Motion Hearing (Doc. 49; Tr.) at 93-95, 97-98.   The Court took under advisement Alternate Health's request for sua sponte summary judgment in its favor on Counts V-VIII (assault, battery, intentional infliction of emotional distress, and negligent retention).   See Minute Entry (Doc. 44); Tr. at 97, 99.   In this Order, the Court addresses these remaining claims.

## II.   **Sua Sponte Summary Judgment**

### A. **Applicable Law**

Pursuant to Rule 56(f), Federal Rules of Civil Procedure (Rule(s)), "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant . . . ."   Indeed, the Eleventh Circuit has recognized that "[a] district court

possesses the power to enter summary judgment <u>sua</u> <u>sponte</u> provided the losing party 'was on notice that she had to come forward with all of her evidence.'"   <u>See</u> <u>Burton v. City of Belle Glade</u>, 178 F.3d 1175, 1203 (11th Cir. 1999) (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986)).   Thus, "so long as the party against whom judgment will be entered is given sufficient advance notice and has been afforded an adequate opportunity to demonstrate why summary judgment should not be granted, then granting summary judgment <u>sua</u> <u>sponte</u> is entirely appropriate."   <u>Id.</u> at 1204.   Notably, in <u>Burton</u>, the Eleventh Circuit affirmed the <u>sua</u> <u>sponte</u> entry of summary judgment against the plaintiffs regarding a claim on which neither party had sought summary judgment (the Title VI claim). <u>See</u> <u>id.</u> at 1203-04 & n.31.   Significantly, the plaintiffs had moved for summary judgment on a separate claim (the § 1983 claim) that required proof of discriminatory intent and the Eleventh Circuit found that the plaintiffs' evidence was insufficient under the law to raise an issue of fact on the issue of intent.   <u>Id.</u> at 1195.   Because the Title VI claim also required proof of discriminatory intent, the <u>Burton</u> court reasoned that plaintiffs "had more than reasonable opportunity to marshal the same evidence of intent in support of their Title VI claim as well."   <u>Id.</u> at 1204.   The Eleventh Circuit found that "since [the plaintiffs] plainly failed to adduce sufficient evidence as to intent with respect to any portion of their § 1983 claims, it likewise follows <u>a</u> <u>fortiori</u> that they could not present sufficient evidence of intent as to this Title VI claim either."   <u>Id.</u>   The court explained that, "where a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided."   <u>See</u> <u>Artistic Entm't, Inc. v. City of Warner Robins</u>, 331 F.3d 1196, 1202 (11th Cir. 2003); <u>see</u> <u>also</u> Wright & Miller, <u>Federal</u>

Practice & Procedure § 2720.1 ("The practice of allowing summary judgment to be entered for the non-moving party in the absence of a formal cross-motion is appropriate.").

### B. Analysis

Here, Reillo moved for summary judgment in her favor on all claims, providing her with both the incentive and the opportunity to present the Court with any evidence in support of her claims.  See Burton, 178 F.3d at 1204.  Moreover, as set forth in the procedural history above, Reillo had notice that the issue of summary judgment in Alternate Health's favor was before the Court given the arguments raised in the Response and Sur-Reply, and in the Order the Court not only made clear that it was entertaining Alternate Health's request, it also provided Reillo an additional opportunity to respond to those arguments at a hearing.   At the Hearing, Reillo acknowledged that the Court had discretion to enter summary judgment sua sponte.[2]  See Tr. at 40.   Nevertheless, Reillo's counsel maintained that he did not have sufficient time between the Order and the date of the Hearing to adequately prepare, and argued that the Court should exercise its discretion to allow counsel additional time to properly brief Alternate Health's sua sponte summary judgment request.  See Tr. at 62.  However, long before the August 4, 2020 Hearing, Plaintiff's counsel had notice that the issue of sua sponte summary judgment was before

---

[2] Plaintiff asserted that the Court should not enter summary judgment in Alternate Health's favor given the untimeliness and unusual posture of Alternate Health's request.  See Tr. at 40.  Indeed, absent the unique circumstances of this case, the Court would be inclined to construe Alternate Health's argument as a cross-motion for summary judgment and deny it as improperly raised in a response and untimely.  See Nat'l Exch. Bank & Trust v. Petro-Chem. Sys., Inc., No. 11-C-134, 2013 WL 1858621, at *1-2 (E.D. Wis. May 1, 2013) ("Rule 56(f) exists largely for the convenience of the court, to save it from proceeding with trials that it can readily see are unnecessary. It did not create a substitute for a cross-motion to summary judgment."). However, it is apparent from the record in this case that a trial is unnecessary.  As discussed below, even accepting Reillo's version of the facts, she cannot legally prevail on any of her claims. As such, the Court will exercise its discretion to consider whether sua sponte summary judgment is warranted under the circumstances of this case.

the Court as Alternate Health raised it in the Response, filed on November 27, 2019, and the Sur-Reply, filed on January 15, 2020.   Surprisingly, in her Reply, Plaintiff elected not to respond to Alternate Health's sua sponte summary judgment arguments at all, and did not seek leave to respond to the additional arguments presented in the Sur-Reply.   Nor did Reillo move for a continuance of the Hearing after the Court entered the Order setting the Hearing and specifically noting an intention to address the request for entry of summary judgment in favor of Alternate Health.   Notably, at the Hearing, Reillo's counsel demonstrated his awareness and familiarity with the legal principles applicable to Reillo's claims and Alternate Health's request for entry of summary judgment sua sponte.   And most tellingly, Reillo's counsel never made any attempt to identify probative evidence in his possession that he would bring to the Court's attention if given additional time to do so. Thus, the Court is satisfied that the legal issues are fully developed, the evidentiary record is complete, and Reillo has had not just reasonable, but ample notice and opportunity to be heard on whether summary judgment in favor of Alternate Health is warranted on her remaining claims.   See Cafaro v. Zois, 693 F. App'x 810, 815-16 (11th Cir. 2017); Everett v. Grady Memorial Hosp. Corp., 703 F. App'x 938, 947 (11th Cir. 2017).

Nevertheless, before proceeding to the merits, the Court must emphasize that the parties' decision to litigate this case in this bizarre manner is both extremely reckless and strongly discouraged.   Based on the representations made at the August 4, 2020 Hearing, Alternate Health appears to have made the extraordinarily unusual strategic decision that rather than engage in any discovery or pursue dispositive motion practice, it would do nothing and roll the dice in front of a jury at trial.   See Tr. at 6-7, 16-17.   The Court cannot fathom the rationale that justified this strategy.   Even if skipping motion practice and

proceeding straight to trial was a misguided attempt to conserve resources, failing to prepare for trial by doing even so much as taking the plaintiff's deposition to properly explore the contours of her claim defies explanation.   Alternate Health was only saved from its bizarre strategy because Reillo herself opted for an even worse one.   It is unclear why Reillo would elect to file a lawsuit if she did not intend to engage in discovery to obtain the necessary evidence to support her claims and uncover Alternate Health's potential defenses.   Moreover, nothing but a fundamental misunderstanding of the summary judgment standards applicable in federal court could have led to Reillo's decision to seek summary judgment in her favor despite having essentially nothing more than her own declaration to support her claims.   And, but for Reillo's inexplicable decision to file a motion for summary judgment, Alternate Health would be facing the expense and risk of a trial in this case in federal court on all eight counts of the Complaint.[3]

Nevertheless, Reillo's Motion opened the door to allow a pre-trial review of the sufficiency of the evidence supporting her claims, and it is readily apparent that her claims are not legally viable.   While the Court finds Alternate Health's manner of proceeding in this action reckless, and does not condone or encourage the strategic choices made here, the Court is also convinced that letting this case proceed to trial and summoning a jury to hear the case would be an unjustifiable waste of resources.   Reillo has had ample opportunity to present her evidence and legal arguments to the Court, and even if a jury were to accept Reillo's evidence and believe her version of events entirely, her claims against Alternate Health would still fail as a matter of Florida law.   Thus, for the reasons

---

[3] Several of which could likely have been dismissed at the outset of this case via a Rule 12(b)(6) Motion based on the legal principles discussed at the August 4, 2020 Hearing, as well as the principles discussed below.

set forth below, the Court will enter summary judgment <u>sua</u> <u>sponte</u> on the remaining claims in this action.

### III.    Background

### A. The Assault

Michele Reillo worked for Alternate Health[4] from approximately February 10, 2016, until approximately January 30, 2018.   <u>See</u> Motion, Ex. A: Declaration of Michele Renee Reillo Pursuant to 28 U.S.C. § 1746 (Doc. 31-1; Reillo Decl.) ¶ 4.   Reillo maintains that at a "work event" on May 24, 2017, she was "physically groped" by James Tykoliz, a Director on the Board of Directors for Alternate Health Corp.   <u>See</u> Reillo Decl. ¶ 26.   According to Reillo, Tykoliz "attempted to kiss [her], and ended up sticking his tongue down [her] throat, which was completely unwarranted, and which [she] resisted."   <u>Id.</u>   Reillo also avers that Tykoliz made "verbal sexual and harassing comments throughout [her] employment with [Alternate Health].   He made sexual advanced [sic] and berated [her] work constantly for no apparent reason."   <u>See</u> Reply, Ex. A: Supp. Decl. of Michele Renee Reillo Pursuant to 28 U.S.C. § 1746 (Doc. 36-1; Reillo Supp. Decl.) ¶ 7.   Reillo declares that Tykoliz's behavior caused her physical and emotional distress such that she sought treatment from a doctor and received a prescription for Wellbutrin.   <u>See</u> Reillo Decl. ¶¶ 29-30.   She also maintains that she continues "to suffer from gastrointestinal distress, chest pain, muscle stiffness, and shakiness since" the alleged attack.   <u>Id.</u> ¶ 32.   Tykoliz categorically denies Reillo's allegations of assault and maintains that he was in Toronto on May 24, 2017, and

---

[4] Defendant Alternate Health USA, Inc. is a subsidiary of Alternate Health, Corp.   <u>See</u> Response, Ex. 1: Declaration of Michael L. Murphy, MD (Doc. 33-1; Murphy Decl.) ¶ 2.   The facts of this case also involve Alternate Health, Inc., another subsidiary of Alternate Health, Corp., as well as Alternate Medical Media, an "educational subsidiary" of Alternate Health, Corp.   <u>See</u> Response at 1-2; Murphy Decl. ¶¶ 2, 3.   The parties do not raise any arguments distinguishing between these entities, thus in this Order, the Court will refer to them collectively as Alternate Health.

"not at any work event with Ms. Reillo."   See Response, Ex. 3: Declaration of James "Jim" E. Tykoliz (Doc. 33-3; Tykoliz Decl.) ¶¶ 16-17.   According to Tykoliz, he has only met Reillo face-to-face on two occasions, once in Jacksonville, Florida on January 30, 2017, where they met about the "start of a working relationship with Alternate Health," and the second time on February 17, 2017, at the Neubauer Hyperbaric Neurologic Center in Lauderdale by the Sea, Florida.   Id. ¶¶ 12-14.

According to Reillo, following the May 24, 2017 attack, she "notified the head of Human Resources regarding Tykoliz's unwarranted behavior," who informed Reillo that "she would look into the matter."   See Reillo Decl. ¶¶ 26-27.   Reillo identifies "Elizabeth (LNU)" as the person she complained to in Human Resources.   See Reillo Supp. Decl. ¶ 9.   Alternate Health disputes these allegations.   Michael L. Murphy, MD, the Chairman of the Board of Directors of Alternate Health Corp., asserts that the head of Human Resources in May 2017 was Johnson Thomas.   See Response, Ex. 1: Declaration of Michael L. Murphy, MD (Doc. 33-1; Murphy Decl.) ¶¶ 1, 4.   According to Murphy, "[i]f any complaint of harassment or assault had been made by Michele Reillo, this would have been reported to the Board of Directors.   We received no such report from Ms. Reillo, from Johnson Thomas, from anyone else at Human Resources, or from anyone else within the company."   Id. ¶ 4.[5]   Murphy asserts that this information is based on his "personal knowledge gained in [his] position on the Board, [his] access to corporate records of both

---

[5] In her Reply, Reillo argued that the Court should strike this portion of the Murphy Declaration as hearsay because "Murphy has no personal knowledge regarding what the other Board members knew or heard about [Reillo's] complaints."   See Reply at 4-5.   Reillo further contended that "to the extent that Murphy attempts to testify to what other Board members, Johnson Thomas, or anyone else with the HR department, told him about what they knew or didn't know about any complaints by Plaintiff, such testimony would be inadmissible hearsay."   Id.   The Court addressed and rejected this argument at the August 4, 2020 Hearing.   See Tr. at 20.

Alternate Health and Alternate Health Corp., and [his] knowledge of corporate policies for handling such complaints, if such complaints are actually made to Human Resources." See Sur-Reply, Ex. 1: Supplemental Declaration of Michael L. Murphy, MD (Doc. 39-1; Murphy Supp. Decl.) ¶¶ 3-4.[6]

In addition, Murphy states that neither Alternate Health Corp. nor Alternate Health employed anyone in Human Resources by the name of Elizabeth.  Id. ¶ 5.   However, Murphy explains that an affiliated company, Integrity Ancillary Management, LLC, employs an Elizabeth Newlan in Human Resources, who "at times handled some work for the Alternate Health San Antonio office . . . ."  Id. ¶ 6.   Murphy states that he "searched the corporate files maintained by these corporations, including those that had been maintained by Ms. Newlan during her employment, and found no record of any complaint from Ms. Reillo regarding any alleged misconduct by Mr. Tykoliz or any other employee, supervisor or director (either made to Ms. Newlan or to anyone else)."  Id.   According to Murphy, both Alternate Health and Integrity have a "regular practice and policy" to "document in writing any employee complaints received by Human Resources," and Newlan, as with all employees of these companies, was informed of this policy.  Id.

---

[6] Reillo asserts that she also emailed "Rick and Sam, who were working on programs with [her], and let them know that the abuse was occurring verbally from Tykoliz."  See Reillo Decl. ¶ 27.  Reillo states that "Rick sent me an email acknowledging that he said something to Tykoliz concerning his behavior."  Id. ¶ 28. Reillo does not attach these emails to her Declaration.  Rick Anderson, the managing partner of Alternate Medical Media, worked with Reillo in 2016 and 2017, to create video educational courses.  See Response, Ex. 2: Declaration of Rick Anderson (Doc. 33-2; Anderson Decl.) ¶¶ 1, 3, 10.  Reillo was responsible for writing the content, as the subject matter expert, and Anderson would create the video along with his team, Sam Montgomery and Joe Ciupik.  Id. ¶ 3.  Anderson states that contrary to Reillo's representation, he "never received any email from Ms. Reillo regarding" any incident of verbal abuse from Tykoliz," nor did he "reply to an email that [he] did not receive."  Id. ¶ 23.  Anderson maintains that he never heard "any such complaint concerning Mr. Tykoliz made by Ms. Reillo or by anyone."  Id.  In her Supplemental Declaration, Reillo insists that she did advise Anderson that "Tykoliz did in fact abuse [her], but nothing was done in response by Anderson or anyone with [Alternate Health]."  See Reillo Supp. Decl. ¶ 6.

**B.  The Termination**

Reillo maintains that while she was working on one of the CME courses for Alternate

Health she raised concerns about "releasing, publishing, and/or marketing a CME course

covering a cannabis product that had no IND number," which in Reillo's view, would violate

federal and state law.  See Reillo Decl. ¶ 36.  Reillo explains that the Federal Drug

Administration (FDA) requires researchers in the field of medical cannabis to submit an

investigational new drug (IND) application and receive an IND number, and without such

a number such research is "not government approved."  Id. ¶ 18.  In Reillo's view,

Alternate Health "is a company that researches medical cannabis, and must submit IND

applications and IND numbers for its research, education, and training materials it

develops regarding whole plant cannabis studies."  Id. ¶ 21.  Reillo maintains that in

August of 2017, she raised her concerns about the lack of IND number, among other

things, with Tykoliz, but he "refus[ed] to take [her] concerns into account, and even called

[her] a 'fuc*-up' in the process of doing so."  Id. ¶ 39.  In support, Reillo attaches an email

chain from August 19-20, 2017, where Tykoliz used the expletive.  See Motion, Ex. G.

Among other things, this email chain contains an email from Tykoliz expressing his

disappointment that Reillo had not completed the CME course, and Reillo's response in

which she refers to a previous conversation with Tykoliz where she raised an issue about

"the timing of the course with cbd product distribution by Alternate and price of doing the

course."  See id. at 4.  Tykoliz and Reillo dispute the meaning of this email chain and the

events leading up to it, and Tykoliz states that he was not referring to Reillo when he used

the expletive.  See Reillo Decl. ¶¶ 33-39; Tykoliz Decl. ¶¶ 2, 5-6; see also Response, Ex.

2: Declaration of Rick Anderson (Doc. 33-2; Anderson Decl.) ¶¶ 13-16.

In January 2018, Reillo's employment with Alternate Health came to an end. According to Reillo, she was "terminated by [Alternate Health] on January 30, 2018."   See Reillo Decl. ¶ 40.   According to Alternate Health, Reillo submitted a Letter of Resignation on January 16, 2018, and her last day of work was January 19, 2018.   See Murphy Supp. Decl. ¶¶ 7-8, Ex. 1 (Resignation Letter).[7]

IV.    **Discussion**

   **A.  Assault and Battery – Counts V-VI**

In Counts V and VI of the Complaint, Reillo asserts claims against Alternate Health for civil assault and battery arising out of the alleged May 24, 2017 sexual attack by Tykoliz. See Complaint ¶¶ 63-74.   In the Motion, Reillo argued that Alternate Health is vicariously liable for these intentional torts because the wrongful conduct occurred "within the scope" of Tykoliz's employment.   See Motion at 12, 13.   At the August 4, 2020 Hearing, Reillo's counsel conceded that there was no evidence Tykoliz was acting within the scope of his employment when he allegedly attempted to forcibly kiss Reillo.   See Tr. at 75-77. Instead, Reillo asserted for the first time that Alternate Health is vicariously liable because it ratified Tykoliz's conduct.   Id. at 75-76.   However, regardless of which theory Reillo intends to pursue, she fails to present any evidence which could support a finding of vicarious liability under the circumstances described in Reillo's declarations.

---

[7] According to Tykoliz, Reillo resigned after she was confronted about alleged misconduct, specifically, fabricating results of a research study, and given the option to resign or "fac[e] the consequences of any appropriate legal action that Alternate Health would need to pursue concerning" the matter.   See Tykoliz Decl. ¶¶ 9-10; see also Sur-Reply, Ex. 3: Supplemental Declaration of James "Jim" E. Tykoliz (Doc. 39-3; Tykoliz Supp. Decl.) ¶¶ 3-4.   In her Reply, Reillo moved to strike paragraph 9 of the Tykoliz Declaration, arguing that Tykoliz's statements are hearsay because they are based on "what Michael Klipper did, heard, saw and experienced . . . ."   See Reply at 6.   However, Reillo specifically withdrew her objection to this paragraph at the Hearing.   See Tr. at 24.

Under Florida law, "an employer is vicariously liable for an employee's tortious conduct where the conduct occurs within the scope of the employment."   See Fields v. Devereux Found., Inc., 244 So. 3d 1193, 1196 (Fla. 2d Dist. Ct. App. 2018) (citing Garcia v. Duffy, 492 So. 2d 435, 438 (Fla. 2d Dist. Ct. App. 1986)).   However, when the underlying conduct is an intentional tort, merely "showing that an employee was on duty at the time he assailed someone is not sufficient to establish that the conduct occurred within the scope of employment."   Id.   Rather, to hold Alternate Health vicariously liable for Tykoliz's alleged wrongdoing, Reillo must show that Tykoliz's tortious conduct was: 1) "'of the kind he was employed to perform,'" 2) occurred "'substantially within the time and space limits authorized or required by the work to be performed,'" and 3) was "'activated at least in part by a purpose to serve the master.'"   Id. (quoting Iglesia Cristiana La Casa Del Señor, Inc. v. L.M., 783 So. 2d 353, 357 (Fla. 3d Dist. Ct. App. 2001)); Goss v. Human Servs. Assocs., Inc., 79 So. 3d 127, 132 (Fla. 5th Dist. Ct. App. 2012).   "The question of whether an employee is acting within the course and scope of employment, where the facts are not in dispute, is that of law."   See Goss, 79 So. 3d at 132.   Significantly, "sexual misconduct by employees is generally held to be outside the scope of employment and, therefore, is insufficient to impose vicarious liability on the employer."   See Carter v. America Online, Inc., 208 F. Supp. 2d 1271, 1279 (M.D. Fla. 2001).

Accepting Reillo's account as true, the alleged assault and battery occurred at a "work event" when Tykoliz groped Reillo, attempted to kiss her, and "[stuck] his tongue down [her] throat."   See Reillo Decl. ¶ 26.   While the attack may have occurred "within the time and space limits" of their work, it is not the kind of conduct Tykoliz was employed to perform, nor has Reillo offered any evidence to indicate that Tykoliz acted, even in part,

with "a purpose to serve the master." <u>See</u> <u>Fields</u>, 244 So. 3d at 1196.   Indeed, at the August 4, 2020 Hearing, Reillo conceded that she had no evidence to support a finding that Tykoliz was acting with an intent to serve his employer, and instead argued, for the first time, that Alternate Health could be held liable under a theory of ratification.   <u>See</u> Tr. at 75-77.

In support of her ratification theory, Reillo cited <u>Haq v. United Airlines, Inc.</u>, No. 93-2248-CIV-MARCUS, 1996 WL 426814, at *5 (S.D. Fla. Apr. 16, 1996) which states that "an employer may be held accountable for the intentional torts of its employees where the employer either directed the wrongful acts or ratified the conduct afterward."   The court in <u>Haq</u> explains that: "In order to successfully travel on a ratification theory, the principal of the employee must 'have full knowledge of all the facts,' there must be 'an intention on the part of the purported principal to ratify the act in question' and 'the required intention must be manifested in some way.'"   <u>See id.</u> at *7.   Although unclear, Reillo appears to contend that Alternate Health manifested an intent to ratify the sexual assault because it failed to take any action against Tykoliz after she reported the attack.   However, the Florida Supreme Court has expressly held that: "a criminal act c[o]mmitted outside the scope of the servant's authority cannot be ratified . . . ."   <u>See</u> <u>Mallory v. O'Neil</u>, 69 So. 2d 313, 314-15 (Fla. 1954).   The <u>Mallory</u> court further reasoned that even if exceptions to this rule exist, no ratification had occurred in that case despite the fact that the employer had gone so far as to "secure[] a lawyer to represent his servant and retained the servant in his employment after serving his jail sentence . . . ."   <u>Id.</u>; <u>see</u> <u>also</u> <u>Riddle v. Aero Mayflower Transit Co.</u>, 73 So. 2d 71, 71-72 (Fla. 1954) (finding employer did not ratify employee's assault on a customer where employer stated in open court with full knowledge of the

testimony against the employee that he would re-employ him) (citing <u>Chaney v. Frigidaire</u> <u>Corp.</u>, 31 F.2d 977, 978 (5th Cir. 1929)); <u>Chaney</u>, 31 F.2d at 978 ("Appellee's failure to discharge the salesman is not enough to show that it ratified or adopted the assault and battery, which it is alleged was committed by its salesman upon appellant. Indeed, it seems extravagant to suggest that appellee, by any action it might take, could ratify or adopt such conduct." (internal citation omitted)).   Thus, even accepting Reillo's statements that the attack occurred, she reported it to Human Resources, and nothing was done, Alternate Health's failure to take action against Tykoliz alone, is insufficient as a matter of law to establish Alternate Health's ratification of the assault.   <u>See</u> <u>Haq</u>, 1996 WL 426814, at *8 ("Nor may [employer's] failure to discipline [employee] in connection with his conduct during his investigation into Plaintiff's claims be used to infer ratification.").

Because Reillo does not even allege, <u>see</u> Complaint ¶¶ 29, 65, 71, much less offer evidence, that Tykoliz attacked Reillo "in furtherance of [his] employment with" Alternate Health, or that Alternate Health with full knowledge of the attack manifested an intent to ratify it, Reillo cannot hold Alternate Health vicariously liable for this conduct.   <u>See</u> <u>Goss</u>, 79 So. 3d at 132; <u>see</u> <u>also</u> <u>Speaks v. City of Lakeland</u>, 315 F. Supp. 2d 1217, 1229 (M.D. Fla. 2004); <u>Carter</u>, 208 F. Supp. 2d at 1279.   And, because Reillo cannot prevail on these claims against Alternate Health even if her version of these events is entirely true, the Court finds it appropriate to enter summary judgment <u>sua</u> <u>sponte</u> in favor of Alternate Health on Counts V and VI.

### B.  Intentional Infliction of Emotional Distress – Count VII

Reillo asserts a claim for intentional infliction of emotional distress (IIED) in Count VII premised on Tykoliz's alleged sexual assault as well as his alleged verbal abuse and

harassment.   See Complaint ¶¶ 29, 36, 77-81; Motion at 13.   As with the assault and battery claims, Reillo seeks to hold Alternate Health vicariously liable for Tykoliz's conduct. See Motion at 13.   Although there are myriad disputed issues of fact, the Court also finds it appropriate to enter summary judgment sua sponte in Alternate Health's favor on this claim because even accepting Reillo's version of events as true and drawing all inferences in her favor, this claim fails as a matter of Florida law.

Preliminarily, the Court observes that it appears doubtful that Reillo's evidence is sufficient to establish Alternate Health's vicarious liability for Tykoliz's abusive conduct. See Carter, 208 F. Supp. 2d at 1279 (finding sexually harassed employee could not hold employer vicariously liable for intentional infliction of emotional distress because she failed to show that the harassment somehow related to the perpetrator's job and was motivated by a desire to serve his employer).   Nevertheless, even if Reillo can establish that Tykoliz's conduct was within the scope of his employment, Reillo cannot prevail on this claim because the conduct she describes in her Declarations fails to meet the threshold of outrageousness necessary to support a claim for intentional infliction of emotional distress as a matter of Florida law.[8]

"Under applicable Florida law, in order to state a cause of action for intentional infliction of emotional distress the plaintiff must demonstrate: 1) deliberate or reckless infliction of mental suffering by defendant; 2) by outrageous conduct; 3) which conduct of

---

[8]  At the Hearing, Reillo's counsel argued that whether the conduct was sufficiently outrageous was an issue of fact for the jury to decide, and then later appeared to concede that the Court does have the ability to decide whether the outrageousness requirement is met, but maintained that the evidence is sufficient to create an issue of fact.   See Tr. at 90.   However, as explained below, whether a person's conduct is sufficiently outrageous is a question of law, and numerous courts applying Florida law have found the type of conduct described here, even assuming Reillo's version is true, to be insufficiently outrageous. Significantly, Reillo's counsel conceded at the Hearing that he did not have any other evidence on this issue "beyond what the record already has."   See Tr. at 87.

the defendant must have caused the suffering; and 4) the suffering must have been severe." See Golden v. Complete Holdings, Inc., 818 F. Supp. 1495, 1499 (M.D. Fla. 1993). "[W]hether a person's conduct is sufficiently outrageous and intolerable as to form the basis for a claim of intentional infliction of emotional distress is a matter of law for the court, not a question of fact." Id. at 1499-1500. Moreover, other courts have noted, "[c]laims for emotional distress in the workplace have been permitted to go forward only where the claims involve persistent verbal abuse coupled with repeated offensive physical contact . . . ." See McNichols v. Miami-Dade Cnty., No. 02-23034-CIV, 2006 WL 1104336, at *19 (S.D. Fla. Mar. 24, 2006); Johnson v. Thigpen, 788 So. 2d 410, 413-14 (Fla. 1st Dist. Ct. App. 2001) ("[F]ederal courts interpreting Florida law have allowed claims of intentional infliction of emotional distress in the workplace to go forward in circumstances involving repeated verbal abuse coupled with repeated offensive physical contact.") (emphasis added)) (collecting cases). Thus, even if Tykoliz's behavior did fall within the scope of his employment, his verbal abuse coupled with one isolated incident of offensive physical contact is not sufficiently outrageous as a matter of law to support a claim for intentional infliction of emotional distress. See Hayes v. Liberty Nat'l Life Ins. Co., No. 94-425-CIV-J-10, 1995 WL 500896, at *3-4 (M.D. Fla. Aug. 4, 1995) (finding allegations insufficient to state a claim of IIED where plaintiff alleged ongoing sexual harassment, including one incident where her supervisor grabbed her and attempted to kiss her) (collecting cases); see also Goggin v. Higgins, No. 8:13-cv-2068-T-24EAJ, 2013 WL 6244536, at *2 (M.D. Fla. Dec. 3, 2013) (granting motion to dismiss where plaintiff alleged intentional infliction of emotional distress based on sexual harassment and unwanted sexual advances, including allegations that the defendant frequently grabbed the plaintiff's

buttocks); <u>Vernon v. Med. Mgmt. Assocs. of Margate, Inc.</u>, 912 F. Supp. 1549, 1559 (S.D. Fla. 1996) ("The touchstone of [workplace sexual harassment] cases is the presence of <u>relentless</u> <u>physical</u>, as well as verbal, harassment." (emphasis added)).   As such, even if a jury accepted Reillo's account of Tykoliz's behavior as true, this claim would nevertheless fail as a matter of law.   Accordingly, the Court finds it appropriate to enter summary judgment <u>sua</u> <u>sponte</u> on this claim as well.

### C. Negligent Training, Retention & Supervision

Last, in Count VIII, Reillo asserts a claim for "Negligent Training, Retention, and Supervision."   <u>See</u> Complaint ¶¶ 82-87.   In her Motion, Reillo argues that Alternate Health "negligently hired/supervised Tykoliz."   <u>See</u> Motion at 15.   Without explaining why, Reillo maintains that it was "reasonably foreseeable" to Alternate Health that "Tykoliz would have harmed [Reillo] in the manner he did."   <u>See</u> Motion at 14.   Reillo then refers to her assertion that Tykoliz sexually assaulted her, that he verbally abused her, and that she complained to Human Resources, Rick Anderson, and "Sam" about Tykoliz.   <u>Id.</u> Reillo maintains that Alternate Health's failure to investigate Tykoliz and decision to keep him employed despite her claims "serves to highlight [Alternate Health's] negligence."   <u>Id.</u> at 15.   At the Hearing, Reillo clarified that this claim is premised only on a theory of negligent retention.   <u>See</u> Tr. at 78-79.   Also, as articulated at the Hearing, Reillo appears to contend that Alternate Health acted negligently when it failed to take any action after she complained about Tykoliz to Human Resources.   <u>See</u> Tr. at 78-79, 84-85.

"'To state a cause of action for negligent supervision or negligent retention under Florida law the claimant must allege: (1) the existence of a relationship giving rise to a legal duty to supervise; (2) negligent breach of that duty; and (3) proximate causation of

injury by virtue of the breach.'" Atmore v. City of Lake Wales, No. 8:08-cv-2320-T-27EAJ, 2009 WL 10670908, at *3 (M.D. Fla. Dec. 1, 2009) (quoting Albra v. City of Ft. Lauderdale, 232 F. App'x 885, 888 (11th Cir. 2007)).   To establish the employer's negligence, a plaintiff must show that "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." See Groover v. Polk Cnty. Bd. of Comm'rs, --- F. Supp. 3d ----, 2020 WL 2307558, at *5 (M.D. Fla. May 8, 2020) (quoting Degitz v. S. Mgmt. Servs., Inc., 996 F. Supp. 1451, 1461 (M.D. Fla. 1998)).   In addition, "[a] claim for negligent training, supervision and retention 'must be based on an injury resulting from a tort which is recognized under common law.'" See Smith v. America Online, Inc., 499 F. Supp. 2d 1251, 1267 (M.D. Fla. 2007) (quoting Scelta v. Delicatessen Support Servs., Inc., 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999)).   Significantly, "Florida law does not recognize a common law claim of sexual harassment as an independent tort."   Id.

Accepting Reillo's version of events, there are two underlying acts that allegedly caused the physical and emotional damages for which she seeks recovery in her negligent retention claim: 1) Tykoliz's alleged sexual assault, and/or 2) Tykoliz's alleged ongoing verbal abuse.[9]   However, neither of these underlying acts can support a viable negligent

---

[9] It is worth noting that this purported ongoing verbal abuse is not alleged in the Complaint as part of the negligent retention claim.   In the factual background, the Complaint references only the May 24, 2017 attack and the email on August 20, 2017, when Tykoliz allegedly called Reillo a "fuc*-up."   See Complaint ¶¶ 29, 36.   Under Count VII, the claim for intentional infliction of emotional distress, Reillo does vaguely refer to Tykoliz's "intentional verbal and physical harassment and humiliation," see id. ¶ 78, but this allegation is not incorporated into Count VIII for negligent retention, nor does Reillo include any allegation referencing harassment or verbal abuse in Count VIII.   See id. ¶¶ 82-87.   Rather, in Count VIII, Reillo incorporates the background facts and alleges that Alternate Health failed to investigate and remedy "allegations and complaints of workplace violence."   Id. ¶ 86.   Thus, Reillo's theory of negligent retention as alleged in the Complaint appears to be premised solely on the alleged assault and battery.

retention claim under the circumstances presented.   To the extent Reillo argues that Alternate Health is liable for the sexual assault, this claim fails as a matter of law as there is no evidence that Alternate Health knew or should have known that Tykoliz was a threat to others prior to the attack.   See Speaks, 315 F. Supp. 2d at 1229 ("[S]ummary judgment is appropriate on Plaintiff's negligent retention claim because the record is completely barren of any notice that the [employer] had that [the attacker] had ever sexually harassed any other employee."); Smith, 499 F. Supp. 2d at 1267; Groover, 2020 WL 2307558, at *5 ("Plaintiffs must point to something before [the alleged injury] to show that [the employer's] retention of the [employee] was negligent.").   At the Hearing, Reillo's counsel acknowledged that there was only one assault.   See Tr. at 84.   And Reillo does not allege, argue, or present evidence that she complained to anyone at Alternate Health about sexual harassment or misconduct by Tykoliz prior to the May 24, 2017 assault.   See Motion at 14; see also Complaint ¶¶ 7-38, 82-87; Reillo Decl. ¶¶ 26-29.[10]   Nor does Reillo present evidence of anything in Tykoliz's background that should have alerted Alternate Health to the danger he allegedly presented.   Thus, Reillo cannot hold Alternate Health liable for her injuries from the sexual assault and battery because she offers no evidence that Alternate Health acted negligently prior to this attack.

To the extent Reillo's theory is that Alternate Health is liable for her damages from the verbal abuse and harassment that continued after the attack, this theory also fails. According to Reillo, after the assault, she complained to Human Resources, nothing was done, and Tykoliz continued to verbally harass and abuse her.   See Reillo Decl. ¶¶ 26-

---

[10] In her Supplemental Declaration, Reillo states that she complained to HR "about multiple problems I had with Defendant, its board members, and my supervisors" but does not specify when she made those complaints or what she actually reported.   See Reillo Supp. Decl. ¶ 9.

29; Reillo Supp. Decl. ¶¶ 6-7, 9.   However, even if true, Reillo cannot recover on a claim of negligent retention for her injuries stemming from Tykoliz's verbal abuse.   As stated above, a claim for negligent retention must be based on injuries stemming from a recognized common law tort, and Florida law does not recognize an independent tort claim premised on verbal abuse or harassment.   See Perry v. Walmart Inc., No. 2:18-cv-606-FtM-29NPM, 2020 WL 1158719, at *15 (M.D. Fla. Mar. 10, 2020).[11]   Thus, even if Reillo could prove to a jury that Tykoliz was verbally abusing and harassing her, and that Alternate Health failed to take action despite notice of this abuse, this claim would still fail.[12]   Because the record establishes that Reillo cannot prevail against Alternate Health on her claim for negligent retention as a matter of law, the Court will enter summary judgment sua sponte in Alternate Health's favor on this claim as well.

Accordingly, it is

**ORDERED:**

1. The Court sua sponte enters summary judgment in favor of Defendant as to Counts V through VIII of the Complaint.

2. Pursuant to this Order and the Court's rulings at the August 4, 2020 Hearing (Doc. 44), the Clerk of the Court is **directed** to enter judgment in favor of Defendant Alternate Health USA, Inc. and against Plaintiff Michele Renee Reillo on all Counts of the Complaint.

---

[11] And, as stated above, Reillo's allegations, even if true, are insufficient to state a claim for intentional infliction of emotional distress, so she cannot rely on IIED as the requisite underlying tort.

[12] Interestingly, Reillo did not bring any claims premised on gender discrimination, sexual harassment or retaliation pursuant to Title VII or the FCRA, despite noting in her Complaint her intention to amend the complaint and add these claims upon expiration of the EEOC investigatory period.   See Complaint at 1 n.1.

3. The Clerk of the Court is further directed to terminate any remaining pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida this 13th day of November, 2020.

**MARCIA MORALES HOWARD**
United States District Judge

lc11
Copies to:

Counsel of Record